Filed 12/16/21  In re Abel L. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re ABEL L., JR. et al., | B309571 |
| Persons Coming Under the Juvenile Court Law. | (Los Angeles County Super. Ct. No. 20LJJP00221) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff, v. ABEL L., SR., Defendant and Respondent; GUADALUPE S., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge Pro Tempore.  Affirmed.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Respondent.

———————————

Guadalupe S. (mother) appeals from the juvenile court's custody and visitation orders granting Abel L., Sr. (father) sole physical and legal custody over two of her three children, the other of whom had reached majority during the pendency of the case.  Although father was residing in a different county, he had previously shared custody of the two children under a family law order.  The juvenile court took jurisdiction over the children, and eventually removed them, because mother and her wife had had a series of violent altercations in the presence of the children.

Mother argues the court abused its discretion in granting father sole custody when it terminated jurisdiction because she had taken responsibility for her actions, was committed to providing a safe household, her children desired to live with her, and father was an unsafe guardian.  Her contentions are unsupported by the record.

Mother ignored the juvenile court's order that her wife was not to reside in the family home.  She disregarded the requirement not to take the children outside California and, again in their presence, engaged in additional domestic violence with her wife.  Mother never enrolled in court-ordered services and was obstructive in her interactions with the Department of Children and Family Services (the Department).  The juvenile

2

court pointedly described mother's conduct as follows: "From start to finish [mother] has been uncooperative," "refuse[d] to participate in services," "ha[d] no regard for court orders," and exhibits a "complete lack of insight."

The record reveals ample support for the juvenile court's custody and visitation orders, and it did not abuse its discretion in issuing them. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Events Leading up to Dependency Jurisdiction

On March 15, 2013, the Superior Court of Fresno County ordered joint legal and physical custody of Abel L., Jr. and Adrian L. to mother and father, with the children's primary residence to be with mother.

Approximately seven years later, on February 17, 2020, the Department received a referral alleging emotional abuse of Abel (12 years old), Adrian (11 years old), and Jennifer M. (17 years old) by mother and an adult sibling, Andrew G. The referring party stated that on the previous day mother became upset with her wife, Maria J., and threw rubbing alcohol into Maria's face, pulled her hair, and bit her shoulder, leaving teeth marks, bruises, and scratches. The referring party stated that mother then asked her adult child Andrew to beat up Maria, and Andrew hit Maria with a stool and punched her in the face.

That same day, a children's social worker (CSW) responded to the home. The CSW interviewed Andrew, who stated that he heard mother and Maria arguing and saw Maria hit and push mother. The fighting lasted for one hour; some glass and the television were broken. Abel and Adrian were not present; they were in the backyard playing.

3

Jennifer confirmed the fight between mother and Maria took place, and added that on previous occasions, she had been required to physically separate mother and Maria while they fought. Jennifer stated that there had been four physical fights since December 2019. Jennifer witnessed every incident. The CSW also interviewed Adrian and Abel. They were outside the home when the fighting began, but then peeked through the window and saw the two adults throwing things. Adrian said "they fight mostly every day." Adrian felt safe with his mother but not when she resided with Maria. Adrian saw Maria get drunk and act unstable and passed out from drinking. Abel told the CSW that he saw Maria scream at his mother and that there had been many fights. Abel too did not feel safe with Maria living in the home.

A few days later the CSW interviewed mother. Mother stated she and Maria had been married for one year and that there had been more than six incidents of physical domestic violence. Regarding the February 16 referral incident, she denied throwing alcohol on Maria's face or pulling her hair, but admitted to biting Maria on the leg, explaining that she was defending herself. Mother indicated she intended to obtain a restraining order and to start the process of divorce.

On March 12, 2020, the CSW obtained a minute order involving a hearing between mother and Maria which stated, "The petitioner's request for restraining order is discharged. All temporary restraining orders, if any, are dissolved. The case [is] dismissed." The CSW then interviewed mother, and mother stated she was in fact awarded a restraining order against Maria. The CSW asked mother to verify this, but the following day,

mother responded she actually did not file to obtain a restraining order because Maria had moved to Mexico.

**B.      The Petition for Jurisdiction**

On April 6, 2020, the Department filed a Welfare and Institutions Code section 300 petition, under subdivisions (a) and (b)(1),[1] alleging that Adrian, Abel, and Jennifer,[2] were at risk due to mother's domestic violence with Maria.  The petition contained allegations concerning the February 16, 2020, incident, as well as three others that had taken place between 2019 and 2020.

On April 9, 2020, at an initial non-detained hearing, father was found to be the presumed father of Abel and Adrian.  The court concluded there were reasonable services available to prevent detention and, in light of those services, found it would not be detrimental to release the minors to the home of parents. The court ordered the primary residence to be with mother. Family maintenance services were ordered.  The court ordered that the minors were to have no contact with Maria, and that the minors were not to be removed from Southern California.

**C.      Subsequent Investigation**

On October 21, 2020, in its combined jurisdiction/disposition report, the Department notified the court that mother was continuing to allow Maria to live in the home while Jennifer, Abel, and Adrian were present.  The Department had also discovered that, in April 2020, the family (with Maria)

---

[1] Subsequent undesignated statutory citations are to the Welfare and Institutions Code.

[2] Because Jennifer turned 18 during the proceedings, her case was dismissed, and she is not a subject of this appeal.

had traveled to Wisconsin, and during that trip, mother and Maria continued to fight. Adrian reported that during one of these altercations, Maria physically hurt him by striking him in the stomach.

Although Mother had previously indicated she intended to start the process of divorce, she had yet to provide any documentation to the Department that she had begun to follow through on that process.

Father reported that he had financially supported Abel and Adrian since they were born and that he was eager to provide a stable and safe home environment for them. He stated he was unaware mother and Maria were fighting. In late April 2020, mother informed father she was struggling financially and could not provide for the minors, and asked him to pick up the boys.

Father stated that, on April 25, 2020, he arrived to pick up the boys, and that they thereafter resided with him until August 21, 2020. They left father's home, however, because they missed their mother. The Department noted that while residing with father, the children enrolled in school and reported they felt safe. They reported father was cooperative with their efforts to maintain contact with mother, and father made his home available to the Department for monthly home visits.

The CSW also reported that during the time the children resided with father, mother refused to allow the Department to conduct monthly home visits, refused to discuss case-related issues, and did not provide any documentation as to enrollment, participation, or completion of services. Mother told the CSW that she would not participate in services unless ordered to do so.

In a last minute information report prepared for the December 4, 2020 hearing, the Department further reported that

mother was continuing to refuse to cooperate with their investigation and was also declining services.

As to father, he stated that the children had transitioned back to his care and were doing well. The boys were enrolled in school and currently attending in-person classes at their respective schools in Fresno County. Father believed Adrian needed therapy and would benefit from mental health services. Father had asked Adrian's school if it would be able to refer Adrian to counseling services and was waiting to hear back.

## D.    Adjudication and Disposition

On October 21, 2020, the juvenile court held a contested adjudication hearing in which it sustained the allegations of the section 300 petition. The court also concluded that the father was a non-offending parent.

On November 3, 2020, the Department filed an ex parte application, pursuant to section 385,[3] requesting detention of the minors from mother pending the disposition hearing. The request recommended the minors be released to father with monitored visitation for mother. The court granted the request on November 6, detaining the minors from mother and ordering placement with father.

On December 4, 2020, the court held a contested disposition hearing at which the court declared the minors to be dependents of the juvenile court, removed them from mother's custody, and ordered them released to the home of father. The court terminated jurisdiction with a custody order giving father sole

---

[3] Section 385 provides: "Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed . . . as the judge deems meet and proper . . . ."

legal and physical custody, with monitored visitation to the mother.

The court stayed its order until December 8, 2020, and filed an amended custody order on December 10, 2020.

Mother timely appealed.[4]

## DISCUSSION

### A. Applicable Law and Standard of Review

We review the juvenile court's custody and visitation orders under section 362.4 for abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) Under this deferential standard, we uphold the challenged order "unless the court ' " 'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].' " ' [Citations.]" (*Ibid*.)

Under section 362.4, when a juvenile court terminates jurisdiction over a dependent child, it may make custody and visitation orders that become part of any family court proceeding concerning the same child. (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.) " 'When making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child. [Citations.] Furthermore, the court is not restrained by "any preferences or presumptions." [Citation.] Thus, for example, a finding that neither parent poses any danger to the child does not mean that both are equally entitled to half custody, since joint physical custody may not be in the child's best interests for a variety of

---

[4] By letter filed June 8, 2021, the Department notified this court that it would not appear on this appeal because the juvenile court terminated jurisdiction.

8

reasons.  [Citation.]'  [Citation.]"  (*In re Maya L.* (2014) 232 Cal.App.4th 81, 102-103.)

## B.  The Juvenile Court Did Not Abuse Its Discretion in Issuing Custody and Visitation Orders Under Section 364.2

Mother argues that the best interests of the children are served by a custody order that would provide for joint legal and joint physical custody.  She highlights the following from the record in support of her argument:  Adrian was bonded to mother and feels safe with her; Adrian did not have a bed when he initially went to live with father and he does not get along with his stepmother; he says that father yells at him and their relationship is strained; and he does not like father's neighborhood.  Mother notes that Abel requested the juvenile court to allow him to stay with mother.  As to both children, she argues that Abel's choice to live with mother should have been given deference given his "advanced age" of 12.

Mother states she herself is the victim of domestic violence at father's hands when they lived together.  Although father was arrested for battery of a spouse in 2009, mother concedes the case was dismissed.  Notwithstanding, she asserts "there is no evidence that father addressed these concerns."  Mother claims to have "acknowledged her mistake, expressed regret, recognized the impact on the children, and vowed to be a better mother."

Based upon all of these factors, mother concludes the juvenile court's custody order as to both children was "arbitrary," and warrants reversal.

Mother's analysis minimizes the significant evidence of repetitive domestic violence episodes between her and Maria, many of which occurred while the children were present and/or in

9

the home. In February 2020, mother, Abel, Adrian, and Jennifer stated there had been multiple incidents of physical violence between mother and Maria over the course of the year since the two had been married. By mother's own account, there had been more than a half dozen incidents of physical violence during that period.

Regarding the February 16, 2020 incident, by looking through a window, the minors witnessed the violent altercation, which resulted in injuries to mother and Maria. Adrian also reported that Maria got drunk, acted crazy and was on the couch because she had been drinking too much. Neither minor felt safe in the home with Maria there.

Mother also lied to social workers about Maria remaining in the family home, thereby permitting her to reside in the family home over a specific court order requiring that Maria remain outside the home. She also took the minors to Wisconsin, also with Maria, without notifying the Department or obtaining permission, in defiance of the court's order that she not remove the children from Southern California.

Mother chose not to participate in court-ordered services. Even as late as the hearing on December 4, 2020, mother had not provided proof of enrollment in *any* service or cooperated with the Department to establish a written visitation plan. At that point the case had been opened for no less than eight months.

Although the children unsurprisingly expressed their love for mother and a desire to live with her, their wishes must be taken in context. The children's counsel disagreed that they would be safe with mother because, as we have said, she disobeyed court orders, refused to expel Maria from the home,

10

traveled out of state without permission, and never enrolled in any services.

Whereas mother contends "there is no evidence that father addressed these concerns" arising out of incidents from 2009 and 2010, the record contains no evidence of any subsequent domestic violence by father. Moreover, father told the CSW that he decided to end his relationship with mother as a result of these earlier domestic violence incidents.

We highlight the observations of the bench officer who had the benefit of several contested hearings to assess mother's credibility, the impact of her behaviors on the children, as well as her willingness to pursue services and obey court orders: "From start to finish [mother] has been uncooperative and continues to refuse to participate in services, whether they're court ordered or not. She has no regard for court orders as she did, as indicated, take the children out of the State of California in defiance of a court order and allowed the children to see Maria [J.], the person which the court specifically indicated the children were to have no contact with."

The juvenile court went on to observe that mother's lack of participation in any case plan or services and refusal to participate in any services, demonstrated "a complete lack of insight," which created a substantial risk of harm to the minors. The court also found that mother's lack of participation in any domestic violence services justified sole legal and physical custody.

On the other side of the equation, by the time of the disposition hearing on December 4, 2020, father had already taken affirmative steps to mitigate his children's psychological harm sustained by their exposure to violence in the maternal

11

home by seeking out counseling referrals for Adrian, and connecting the children to services in Fresno County.

The juvenile court did not abuse its discretion in issuing the custody and visitations orders for the children, which are amply supported by the record.

### DISPOSITION

The orders are affirmed.
NOT TO BE PUBLISHED


                                                    CRANDALL, J.*


We concur:



        ROTHSCHILD, P. J.



        BENDIX, J.

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.